IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENG HENG, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 02-1456 |
| | : | |
| BALFOUR BEATTY CONSTRUCTION, INC., | : | |
| | : | |
| Defendant. | : | |
| _____/ | | |
| KENG HENG, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 02-3605 |
| | : | |
| AMERICAN HOME ASSURANCE COMPANY and FEDERAL INSURANCE COMPANY a/k/a CHUBB GROUP OF INSURANCE COMPANIES, | : | |
| | : | |
| Defendants. | : | |
| _____/ | | |

**DEFENDANTS' SECOND MOTION FOR SANCTIONS**

Defendants, Balfour Beatty Construction, Inc. ("Balfour Beatty"), American Home Assurance Company and Federal Insurance Company, by and through their undersigned attorneys, hereby move for sanctions to be imposed against Plaintiff, Keng Heng, Inc. ("Keng Heng"), and as grounds therefore state:

1.  Defendants regret the need to bring this Motion before the court; however, Defendants have been unable to procure further discovery from Plaintiff without Court intervention. Plaintiff's conduct in this regard is severely impairing Defendants' ability to prepare its defense of Plaintiff's claims.

2.  As the Court is aware, Defendant Balfour Beatty served its First Set of Interrogatories and First Request for Production upon Plaintiff in July 2002. Plaintiff failed to respond by the August 19, 2002 deadline established by the Federal Rules of Civil Procedure.

1

3. Notwithstanding numerous telephonic communications and a series of five letters from Defendants' counsel spanning two months, Plaintiff still failed to provide responses to the July 2002 discovery requests.

4. As a result, Defendants filed their first Motion to Compel and the Court conducted a telephonic hearing on December 9, 2002. During this hearing, Magistrate Judge Rapoport granted Defendants' Motion to Compel and ordered Plaintiff to provide the discovery responses no later than December 23, 2002. Importantly, Judge Rapoport expressly warned Plaintiff that the failure to comply with this Court-ordered deadline could result in dismissal.

5. December 23, 2002 passed without Plaintiff providing the ordered responses, without Plaintiff seeking an extension of this Court-ordered deadline, and without Plaintiff providing any explanation for its failure to comply with Judge Rapoport's directive.

6. Accordingly, on January 15, 2003, Defendants filed their first Motion for Sanctions, seeking dismissal and costs. Judge Rapoport scheduled a hearing on this Motion for Sanctions to be held on Thursday, February 27, 2003 in Allentown, Pennsylvania.

7. Between the filing of Defendants' first Motion for Sanctions and the scheduled hearing on the same, Plaintiff's counsel repeatedly promised that the long-overdue discovery responses would be produced. Based upon the representations of Plaintiff's counsel, Defendants scheduled the deposition of Plaintiff's corporate representative to begin after the February 27, 2003 hearing, and to continue the following day.

8. On February 25, 2003, only two days before the scheduled February 27, 2003 hearing and deposition, Plaintiff provided very limited, unverified responses to the July 2002 discovery responses. A cursory review of these responses, however, revealed numerous, substantial deficiencies in the completeness and responsiveness of Plaintiff's responses.

9. Judge Rapoport conducted the scheduled February 27, 2003 hearing on Defendants' First Motion for Sanctions. Counsel for both parties attended, along with two corporate representatives of Plaintiff.

10. During the hearing, Defendants' counsel recounted the seven month history of these discovery requests and the considerable frustration experienced by Defendants in attempting to obtain responses to the same. Defendants' counsel also described a number of the deficiencies noted through a cursory review of Plaintiff's limited, unverified responses provided only two days earlier.

11. In response, Plaintiff's counsel asserted a number of excuses for Plaintiff's failure to timely (and completely) respond to the July 2002 discovery requests (e.g. client health issues, moving an office, being out of the country, etc.).

12. During the hearing, Judge Rapoport repeatedly expressed his impression that, but for the setting of the sanctions hearing, Plaintiff would not have provided any discovery responses at all.

13. Judge Rapoport further admonished Plaintiff and Plaintiff's counsel about the seriousness of this issue, Plaintiff's failure to provide adequate responses, and Plaintiff's (and its counsel's) failure to communicate with the Court and Defendants' counsel (i.e. seek an extension) if a deadline could not be met.

14. The hearing concluded with Judge Rapoport taking Defendants' Motion under advisement, pending the receipt of briefs by the parties on the issue of whether a finding of prejudice was necessary to dismiss the case. Judge Rapoport also ordered the parties to confer and develop a discovery plan for finishing this case.

15. Following the hearing, Defendants began conducting the deposition of Plaintiff's corporate representative. As was noted during the hearing, however, the deposition could not be completed due to Plaintiff's failure to provide complete responses to the July 2002 discovery. In

other words, all parties understood and agreed (with Judge Rapoport's encouragement) that the parties proceed as far as possible, but that the deposition would have to resume at a later date, after supplemental responses to the July 2002 discovery requests were received.

16. Unfortunately, and despite Judge Rapoport's admonitions during the hearing, Defendants encountered further frustration during the deposition on February 27. In addition to Plaintiff's failure to provide many of the documents requested in the Notice of Deposition Duces Tecum, on two occasions, Plaintiff's counsel instructed the witness not to answer questions based merely upon an objection to the form of the question (allegedly calling for a legal conclusion). Importantly, there was no suggestion that the question inquired into a privileged matter or was otherwise subject to a Motion for Protective Order.

17. The February 27, 2003 deposition session ended at approximately 5:40 p.m. and was expected to resume the following morning. However, shortly before the deposition was to resume (the morning of February 28, 2003), Defendants' counsel received a telephone call from Plaintiff's counsel, advising that the deposition could not proceed due to the witness experiencing further health problems and checking into a hospital.[1]

18. After the incomplete deposition, in order to develop the discovery plan requested by Judge Rapoport, a threshold issue had to be resolved -- identifying and curing the deficiencies of Plaintiff's limited, unverified responses to the July 2002 discovery requests. Defendants' counsel thoroughly reviewed the responses and issued a lengthy letter on March 6, 2003 to Plaintiff's counsel, detailing the numerous infirmities. (*See* Exhibit "A").

---

[1] While Defendants sympathize with legitimate issues of this nature, Defendants have questioned the veracity of representations about this last minute cancellation. Specifically, a later review of the handout supplied by Plaintiff's counsel during the February 27 hearing indicated a <u>scheduled</u> doctor's visit for the witness on February 28.

19.    Assuming reasonable and appropriate levels of cooperation would be forthcoming from Plaintiff, a discovery plan was developed. The execution of this plan, however, was fundamentally premised on the timely receipt of supplemental discovery responses (to complete the July 2002 requests) no later than March 31, 2003. This is significant because of the nature of the deficiencies in Plaintiff's limited responses (from February 25, 2003). Beyond failing to provide key documents relating to <u>Plaintiff's</u> affirmative claims, Plaintiff failed to provide information identifying witnesses and individuals who Plaintiff believes have knowledge material to this dispute. As an example, Plaintiff's unverified response to Interrogatory No. 2 identified three individuals (all employees/representatives of Plaintiff) by name and address along with the following:

>  PennDOT Employees
>
>  Edward Anthony
>  Consultant

* * *

>  Keng Heng, Inc. employees
>
>  Balfour Beatty former and present employees
>
>  PennDOT personnel involved with the project
>
>  Consultant personnel involved with the project
>
>  Subcontractors on the project
>
>  DBE personnel

20.    Quite obviously, Plaintiff's purported "identification" of witnesses is virtually meaningless and prevents the issuance of deposition subpoenas. Since the above-quoted responses were received (nearly two months ago) and the March 6, 2003 letter of Defendants' counsel identifying this problem, no further information has been provided by Plaintiff. Equally

obvious, without an appropriate identification of potential witnesses, depositions cannot be scheduled and discovery cannot be completed.

21. The discovery plan was submitted to the Court by Defendants on March 13, 2003. (*See* Exhibit "B"). As the very first item, the plan identified the deadline for Plaintiff's supplemental responses (in response to the March 6, 2003 letter identifying deficiencies). Plaintiff's responses were to be submitted to Defendants by March 31, 2003.

22. Plaintiff submitted to the Court, on March 14, 2003, a letter (erroneously dated January 30, 2003) wherein Plaintiff explicitly agreed to the deadlines outlined by Defendants' discovery plan. (*See* Exhibit "C").[2]

23. Also included in Defendants' March 13, 2003 submission to the Court was Defendants' Brief on the Issue of Prejudice and Defendants' Second Motion to Compel.

24. The Brief on the Issue of Prejudice was requested by Judge Rapoport during the February 27 hearing and related to Defendants' then-pending (first) Motion for Sanctions. Ultimately, Defendants' first Motion for Sanctions was granted in part and denied in part. Although Judge Rapoport declined to dismiss Plaintiff's claims, the fees and costs incurred by Defendants in connection with their first Motion to Compel, first Motion for Sanctions and two Motions to Extend Discovery Deadline (resulting from Plaintiff's failure to provide discovery) were awarded as a sanction.

25. The Second Motion to Compel (March 13, 2003) addressed the inappropriate conduct of Plaintiff's counsel during the February 27 deposition (improper instructions to not answer questions). Judge Rapoport granted Defendants' Second Motion to Compel by Order dated March 31, 2003. Noteworthy, in addition to ordering Plaintiff's counsel to refrain from further, inappropriate instructions, Judge Rapoport ordered Plaintiff to produce its corporate

---

[2] By letter dated March 25, 2003, Defendants confirmed Plaintiff's agreement to the deadlines and requested dates to re-depose Plaintiff's corporate representative. (*See* Exhibit "D").

representative for deposition by April 11, 2003, and to reimburse Defendants for the costs incurred in connection with the re-commenced deposition. Of course, this continued deposition could not be conducted without the supplemental discovery responses from Plaintiff (which, under the agreed discovery plan, were due on March 31, 2003). Otherwise, the deposition would take a <u>third</u> session to enable its completion.

26. Plaintiff did not produce the supplemental discovery responses by the March 31 deadline, nor did Plaintiff respond to the March 25, 2003 request for deposition dates. Thus, on April 1, 2003, after the deadline had passed, Defendants sent another letter addressing the missed deadline, and requesting the supplemental responses by April 4, 2003 in order to review the documents prior to recommencing the corporate representative deposition (on the dates proposed by Defendants). (*See* Exhibit "E").

27. On April 4, 2003, by telephone, Plaintiff's counsel confirmed the proposed dates for the continued deposition of Plaintiff's corporate representative (April 17-18, 2003). Furthermore, Plaintiff's counsel represented that most of the supplemental responses were complete, in his possession, and would be sent out by the following Wednesday, April 9, 2003. Defendants' counsel confirmed this conversation by letter dated April 7, 2003. (*See* Exhibit "F").

28. April 9, 2003 came and went without any supplemental responses from Plaintiff. On April 15, 2003, Plaintiff's counsel called Defendants' counsel and advised that the April 17-18 depositions had to be cancelled as Plaintiff's corporate representative remained ill. Defendants' counsel noted during the discussion that, due to the lack of supplemental responses of Plaintiff, the deposition could not be completed anyway. In closing, Plaintiff's counsel suggested that the deposition be re-scheduled for April 29-30, 2003, to which Defendants' counsel agreed.

29. By letter dated April 15, 2003, Defendants' counsel confirmed the new deposition dates and reiterated the serious concern about the impact of the lack of discovery and the continued postponements of the deposition. Specifically, the difficulties associated with incomplete information identifying potential witnesses was noted, including the resulting denial of Defendants' ability to serve subpoenas and conduct depositions. (*See* Exhibit "G").

30. The date is now April 23, 2003. Defendants still await the promised supplemental responses to discovery requests dating back to July 2002. Moreover, it appears that the April 29-30, 2003 deposition must be cancelled <u>again</u> due to Plaintiff's failure to cure <u>any</u> of the deficiencies noted in the March 6, 2003 letter. (*see* Exhibit "A"). Further complicating this situation, the discovery cutoff is just around the corner (June 7, 2003).[3]

31. Keng Heng's failure to provide adequate responses to these basic discovery requests (that were served more than nine months ago) and Keng Heng's multiple violations of discovery deadlines and court directives are inexcusable. Plaintiff's pattern of conduct in this regard reflects its willful disregard of this Court's rules governing discovery as well as the clear and unequivocal directions given by the Court during the December 9, 2002 telephonic conference, the February 27, 2003 hearing and in the March 31, 2003 order.

32. Keng Heng's repeated failure to provide the requested discovery has severely impaired Defendants' ability to prosecute their defense. Plaintiff's Complaint provides scant details of Plaintiff's claims and alleged damages, including little more than a statement that Plaintiff is seeking $2 million, predominately of consequential damages. Consequently, the information sought by Defendants in the First Interrogatories and Request for Production is critical to Defendants' ability to efficiently and effectively prepare their defense and to conduct further discovery -- the lengths to which Defendants have been forced to obtain adequate responses to initial, written discovery requests are nothing short of astounding.

---

[3] The discovery deadline has already been extended <u>twice</u> due to Plaintiff's failure to provide responses to <u>initial</u> written discovery.

33. As previously stated to the Court, Plaintiff's limited discovery responses, provided on the eve of the hearing on Defendants' first Motion for Sanctions, were woefully insufficient. There can be no doubt that "[C]ounsel have a right to receive responsive and complete answers to whichever form of discovery they choose, as long as it complies with the Rules." *Heyward v. Stouffer*, 1991 WL 275604, 4 (E.D. Pa. 1991); *see e.g.* Fed.R.Civ.P. 26(a) and (d).

34. In fact, a party is prejudiced by a witness' failure to provide adequate responses to interrogatories prior to a deposition. *Id.* "A lawyer reviewing answers to interrogatories before taking a deposition is the legal equivalent of a surgeon peering at an X-ray before picking up the blade." *Id.*

35. As a consequence of Keng Heng's systemic and repeated failure to provide the requested discovery, Defendants have been forced to file two motions to compel, two motions for sanctions and seek two extensions of the discovery deadline in addition to the myriad of letters sent to Plaintiff requesting responses and deposition dates. Plaintiff's continued disregard of this Court's orders and discovery rules is yet again jeopardizing Defendants' ability to complete discovery within the timeframe set by this Court.

36. Keng Heng's continued failure to provide even the most basic information, its flagrant disregard of this Court's directives (despite Judge Rapoport's warnings of dismissal) and disregard of the repeated requests made by Defendants' counsel over the last nine months warrant the severe sanction of dismissal. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778 (1976) (reversing the Third Circuit Court of Appeal and upholding the District Court's dismissal of the action due to plaintiff's bad faith as demonstrated by the failure to timely answer interrogatories by a date certain as directed by the court); *see, e.g., Mindek v. Rigatti*, 964 F.2d 1369, 23 Fed.R.Serv.3d 201 (3d Cir. 1992) (holding that dismissal with prejudice is within the District Court's discretion and an appropriate response to plaintiff's deliberate defiance of court orders); *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984); *Hicks v.*

*Feeney,* 850 F.2d 152 (3d Cir. 1988); *ATX Telecommunications Services v. U.S. WATS*, 1994 WL 698057 (E.D. Pa. 1994).

      37.    For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, with prejudice. Additionally, Defendants respectfully request an award of the costs and attorneys' fees incurred by Defendants in bringing this Motion for Sanctions under Fed. R. Civ. P. 37(b)(2), which provides, in pertinent part:

> …In lieu of any of the foregoing orders or in addition thereto, <u>the Court shall require</u> the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

(Emphasis supplied).

      38.    As demonstrated by, among others, the numerous letters written by Defendants' counsel (*see* Exhibits "A", "D", "E", "F" and "G") and the agreements to postpone the depositions, Defendants' counsel has made a good faith effort to confer with opposing counsel and to secure these discovery responses without Court intervention; however, Defendants' attempts have been unsuccessful.

      WHEREFORE, Defendants, Balfour Beatty Construction, Inc., American Home Assurance Company and Federal Insurance Company, respectfully request that this Court dismiss this case with prejudice, along with an award of Defendants' costs and attorneys' fees and any other relief this Court deems proper.

Respectfully submitted on this ___ day of April, 2003.

        MOYE, O'BRIEN, O'ROURKE, PICKERT &
        MARTIN, LLP


By_____
    Sean M. Dillon
    Florida Bar No. 075388
    Teresa A. Eyerman
    Florida Bar No. 089362
    Moye, O'Brien, O'Rourke, Pickert
     & Martin, LLP
    800 South Orlando Avenue
    Maitland, Florida  32751
    (407) 622-5250
    Attorneys for Defendants

cc:    Charles W. Rubendall, III, Esq.

## CERTIFICATION OF SERVICE

We hereby certify that a copy hereof has been furnished to Jeffrey D. Servin, Esq., Goldman & Associates, 1500 Market Street, 12th Floor East, Philadelphia, PA 19102, by overnight mail on this ____ day of April, 2003.

        MOYE, O'BRIEN, O'ROURKE, PICKERT & MARTIN, LLP


By_____
      Sean M. Dillon
      Florida Bar No. 075388
      Teresa A. Eyerman
      Florida Bar No. 089362
      Moye, O'Brien, O'Rourke, Pickert
       & Martin, LLP
      800 South Orlando Avenue
      Maitland, Florida 32751
      (407) 622-5250
      Attorneys for Defendants