IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENG HENG, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 02-1456 |
| | : | |
| BALFOUR BEATTY CONSTRUCTION, INC., | : | |
| | : | |
| Defendant. | : | |
| _____/ | | |
| KENG HENG, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 02-3605 |
| | : | |
| AMERICAN HOME ASSURANCE COMPANY and FEDERAL INSURANCE COMPANY a/k/a CHUBB GROUP OF INSURANCE COMPANIES, | : | |
| | : | |
| Defendants. | : | |
| _____/ | | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' SECOND MOTION FOR SANCTIONS**

Defendants, Balfour Beatty Construction, Inc. ("Balfour Beatty"), American Home Assurance Company and Federal Insurance Company, by and through their undersigned attorneys and pursuant to Rule 7.1 of the Local Rules hereby submit this Memorandum of Law in Support of its Second Motion for Sanctions against Plaintiff, Keng Heng, Inc. ("Keng Heng").

**FACTS**

As set forth in Defendants' Second Motion for Sanctions, Plaintiff's defiance of the discovery rules and this Court's orders have risen to such an egregious level that the Court, in its discretion, should dismiss this action in its entirety. A detailed discussion of Plaintiff's discovery violations is included in Defendants' Second Motion for Sanctions and, therefore, will not be repeated here, other than the following summary.

1

Plaintiff's transgressions began in August 2002, with its failure to respond to Defendants' First Set of Interrogatories and Request for Production of Documents. Subsequently, Defendants wrote multiple times requesting responses, eventually filing a Motion to Compel, which this Court granted in December 2002. Plaintiff's failure to abide by the Court's directive to produce discovery responses by December 23, 2003, and its failure to communicate with the Defendants regarding the status of the responses, eventually led to Defendants' Motion for Sanctions and the hearing on Thursday, February 27, 2003.

Plaintiff finally produced discovery responses two days before the February 27, 2003 hearing, not enough time to properly review the documents prior to the deposition of Plaintiff's corporate representative.[1] During the deposition of Keng Heng's corporate representative the afternoon following the February 27, 2003 hearing, Plaintiff refused to respond to certain questions on advice of its counsel, leading to Defendants' filing a Second Motion to Compel. This motion was granted and the Court issued an order on March 31, 2003 for Plaintiff to produce the corporate representative for re-deposition by April 11, 2003, and to answer the questions posed by Defendants.

Unfortunately, Defendants' frustration in obtaining discovery from Plaintiff did not end with the Court's orders, warnings or the imposition of monetary sanctions against Plaintiff. As requested by the Court, Defendants submitted a proposed discovery plan which identified new deadlines for discovery milestones, including a March 31, 2003 deadline for production of supplemental responses and documents. (*See* Exhibit "B" to Defendants' Motion for Sanctions). By letter of March 14, 2003 to the Court, Plaintiff agreed to the deadlines set out in Defendants' plan. (*See* Exhibit "C" to Defendants' Motion for Sanctions). Once again, Plaintiff failed (and

---

[1] As the court repeatedly noted during the February 27, 2003 hearing, Plaintiff probably would not have provided responses absent the looming hearing. Without time to review Plaintiff's responses in detail, Defendants pointed out a number of insufficiencies regarding the responses during the hearing. However, upon further review of the responses, Defendants find them to be wholly insufficient, and in many regards, providing no response whatsoever.

continues to fail) to meet established deadlines, failing to produce <u>any</u> supplemental information by March 31, 2003, or, for that matter, to the date of this filing.

This background highlights Defendants' continued frustration. Defendants' attempts to obtain discovery have been hindered and obstructed at every turn. For the reasons set forth in Defendants' Motion to Compel, Motion for Sanctions, Second Motion to Compel, Brief to the Court on the issue of Prejudice and this Second Motion for Sanctions, as well as the argument presented during the February 27, 2003 hearing, Defendants respectfully request that this action be dismissed with prejudice.

## DISCUSSION

### I.   STANDARD OF REVIEW

In deciding a motion to dismiss for discovery violations, the Court must balance the weight of factors established by the Third Circuit Court of Appeals in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984); *Hicks v. Feeney,* 850 F.2d 152 (3d Cir. 1988); *ATX Telecommunications Services v. U.S. WATS*, 1994 WL 698057 (E.D. Pa. 1994). Thus, the dismissal of a Complaint is appropriate where the weight of the six factors warrants dismissal; however, in order to justify dismissal, all six factors do <u>not</u> have to be satisfied.

Jurisdiction of this case is based on diversity of citizenship. (Amended Complaint ¶ 1). Federal law, not state law, is controlling when determining issues concerning procedural matters. Discovery violations are procedural matters governed by federal law in diversity cases.[2] *Hughes v. Hemingway Transport, Inc.*, 539 F.Supp. 130, 10 Fed.R.Evid.Ser. 1545 (E.D. Pa. 1982).

---

[2] This is a significant, threshold point as, in connection with Defendants' first Motion for Sanctions, Plaintiff relied upon Pennsylvania law instead of federal law for the proposition that a finding of prejudice is required to support dismissal in its March 14, 2003 submission. *See*, for example, *Stewart v. Rossi*, 681 A.2d 214, 217 (Pa. Sup. 1996). It is beyond reasonable debate, however, that discovery violations are procedural, not substantive, matters. Therefore, the federal rules govern. *Hughes*, *supra*.

II. **PLAINTIFF'S CONTINUED VIOLATIONS OF THE COURT'S ORDERS AND DISCOVERY RULES WARRANT DISMISSAL WITH PREJUDICE.**

Both the Supreme Court of United States and the Third Circuit Court of Appeals have upheld dismissals with prejudice based upon discovery violations. When a party's actions rise to the level of exhibiting bad faith, the court may utilize the severe sanction of dismissal. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 Sup.Ct. 2778 (1976); *see, e.g. Mindek v. Rigatti*, 964 F.2d 1369, 23 Fed.R.Ser.3d 201 (3d Cir. 1992). In *Poulis*, the Third Circuit set forth six factors which control the appropriateness of dismissal. These factors are:

(1) the extent of the *party's responsibility;*

(2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a *history* of dilatoriness;

(4) whether the conduct of the party or the attorney was *willful* or in *bad faith*;

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and

(6) the *meritoriousness* of the claim or defense.

747 F.2d at 868 (emphasis in original). The court must consider and weigh each of these factors in determining whether to dismiss a complaint. Again, however, to support dismissal, all six factors do <u>not</u> have to be satisfied.

A. **The extent of the party's responsibility.**

While a variety of reasons were asserted by Plaintiff in an attempt to justify its failure to respond to the July 2002 discovery requests during the February 27, 2003 hearing, this is <u>not</u> simply a matter where counsel has failed to take some action. Without doubt, a serious breakdown in communication occurred over the last nine months, particularly in regard to the passing of this Court's deadline of December 23, 2002 for Plaintiff to

4

respond to the discovery, and the agreed upon date of March 31, 2003 for production of supplementary responses, without communication explaining the failure to comply or seeking an extension of time. However, this is a matter of producing information within the <u>party's</u> possession. Indeed, Defendants have endured a nine month saga, attempting to obtain Plaintiff's information in support of <u>Plaintiff's</u> affirmative claim for damages. In this day, where a bevy of communication devices exist (e.g. overnight couriers, telephones, facsimiles, e-mails, etc.), it is difficult for Defendants to understand Plaintiff's failure to provide adequate discovery responses, spanning several months.

      **B.**    **The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery.**

The Court should conclude that the Defendants have been prejudiced by the actions of the Plaintiff.

> <u>Prejudice includes deprivation of the information through non-cooperation with discovery</u> and costs expended obtaining court orders to force compliance with discovery.

(Emphasis supplied). *ATX Telecommunications Services v. U.S. WATS*, 1994 WL 698057 (E.D. Pa. 1994) (quoting *Adams v. Trustees of New Jersey Brewery Employees Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994).

> <u>Prejudice need not be irremediable harm</u> that could not be alleviated by [the] court's reopening discovery and postponing trial.

(Emphasis supplied). *Adams v. Trustees,* 29 F.3d at 874. Clearly, Plaintiff's actions leading up to the February 27, 2003 hearing would be considered non-cooperative, including its flagrant disregard of the Court's directive to produce responses to Defendants' discovery requests no later than December 23, 2002. Despite the admonitions by the Court during the December

5

telephonic hearing and the February 27, 2003 hearing, Plaintiff continues to withhold responsive documentation from the Defendants, severely impairing their ability to prosecute their defense.

Not only have Defendants expended costs in obtaining court orders and chasing down discovery responses, Defendants were forced on two occasions to seek extensions of the discovery deadline due to Plaintiff's disregard of the discovery rules and disregard of Magistrate Rapoport's orders compelling discovery. Moreover, to make use of available time, Defendants began a deposition of Plaintiff's corporate representative without the benefit of responsive answers to the discovery requests.

> A lawyer reviewing answers to interrogatories before taking a deposition is the legal equivalent of a surgeon peering at an x-ray before picking up the blade.

*Heyward v. Stouffer*, 1991 WL 275604, *4 (E.D. Pa. 1991).

Now, with the discovery deadline looming, and the corporate representative deposition again canceled and reset, Defendants still do not have adequate responses to the July 2002 discovery requests. Against this background, Defendants have clearly suffered prejudice. Furthermore, the actions taken by the Plaintiff since the February 27, 2003 hearing demonstrate a continued pattern of frustration of Defendants' ability to gather information and prepare a defense.

**C.     A history of dilatoriness.**

At the February 27, 2003 hearing, counsel for Defendants provided a timeline that detailed the history of discovery in this matter. Readily apparent were the lengths to which Defendants were driven to obtain basic responses to written discovery – five letters seeking responses along with a Motion to Compel. Excuses for Plaintiff's failure to respond subsequently began flowing through the point of the December 9, 2002 hearing on the Motion to Compel. Although it was directed to provide the discovery responses by

6

December 23, 2002, Plaintiff failed to do so and failed to communicate with anyone as to why it was not complying. In response to the Motion for Sanctions, the river of excuses began flowing again until, on the eve of the Sanctions hearing, a feeble attempt to respond was finally received. Unfortunately, further hindrances were experienced during the deposition that began on the afternoon of February 27, 2003 and its aftermath (*see* Defendants' Second Motion to Compel which was granted).

In response to Magistrate Judge Rapoport's request, Defendants submitted a proposed discovery plan containing new deadlines for the submission of information. March 31, 2002 was the date established for production of supplemental responses to Defendants. Plaintiff agreed to this deadline through its March 14, 2003 letter to the Court. Now, weeks after the expiration of that deadline, Plaintiff still has not produced any supplemental information. In summary, beyond Plaintiff's failure to meet several deadlines established by the rules of discovery, the agreement of the parties, and the orders of this Court, two Motions to Compel have been granted and a Motion for Sanctions has been granted in part. Two of these Motions involved orders of this Court imposing monetary sanctions against Plaintiff. Clearly, these events demonstrate a history of dilatoriness by Plaintiff.

**D.    Willful or bad faith conduct by a party or its attorney.**

Defendants believe that this factor is inextricably intertwined with section C above. The history of Plaintiff's dilatoriness has risen to a level that transcends a mere failure to communicate. Particularly illustrative is the complete defiance of Magistrate Rapoport's order for Plaintiff to provide its discovery responses by December 23, 2002. No responses were provided by

7

this Court-ordered deadline (or, for that matter, within the <u>two months</u> that followed the deadline). More troubling, however, was the complete lack of communication leading up to (and following) the December 23 deadline. Indeed, the first "explanation" of Plaintiff's failure to comply was communicated by Plaintiff's counsel on January 20, 2003, five days after Defendants filed their Motion for Sanctions.

Additionally, Plaintiff continues to withhold supplemental responses despite its agreement to the March 31, 2003 deadline and its subsequent representation on April 4, 2003 that the information would be provided by Wednesday, April 9, 2003. Defendants respectfully contend that this history demonstrates conduct rising to the level of deliberate ignorance of the discovery rules and this Court's December 9, 2002 Order. Indeed, Plaintiff's conduct has <u>not</u> changed after: 1) Judge Rapoport's warnings during the December 9, 2002 telephonic hearing; 2) Judge Rapoport's admonitions during the February 27, 2003 hearing; 3) the imposition of monetary sanctions in connection with Defendants' first Motion for Sanctions; and 4) the imposition of monetary sanctions relating to Defendants' Second Motion to Compel.

      E.    **The effectiveness of alternative sanctions.**

It appears that only two types of alternative sanctions exist. The first involves monetary sanctions for Defendants' efforts to gain discovery responses (i.e. attorney's fees and costs relating to the Motion for Sanctions, etc.). The Court has already taken this route, <u>twice</u>. The imposition of significant monetary sanctions, however, has not prevented the Plaintiff from exhibiting the same willful, dilatory conduct as before.

The second type of sanction would be dismissal of a portion of Plaintiff's claim – for example, Plaintiff's claim for consequential damages. In light of the fact that Plaintiff has been operating under a threat of dismissal since the December 9, 2002 telephonic hearing and that Plaintiff has not changed its approach to meeting the discovery deadlines, orders or rules, Defendants remain unconvinced that any sanction short of dismissal will be sufficient to prevent further discovery abuses by Plaintiff.

Illustrative is the deposition session that followed the February 27, 2003 hearing engendering a second Motion to Compel, which was granted. Moreover, the following day's deposition was canceled due to the witness having to go to the hospital, purportedly on an emergency basis. In this regard, Defendants note the chronology of alleged health problems that Plaintiff's counsel provided at the February 27, 2003 hearing which indicated a <u>scheduled</u> appointment for February 28, 2003. Thus, Defendants must question the credibility of the "emergency" canceling of the deposition.

Furthermore, Judge Rapoport's comments during the February 27, 2003 hearing are instructive. On several occasions, Judge Rapoport expressed his feeling that no discovery responses would have been received at all if he had not set the Motion for Sanctions hearing. Defendants concur with Judge Rapoport's observations and, further, believe that Plaintiff's continued conduct proves that sanctions short of dismissal would <u>not</u> be effective. Indeed, five (5) letters, a Motion to Compel, Judge Rapoport's Order compelling production and a Motion for Sanctions were all unsuccessful in procuring discovery responses. Only on the eve of the sanctions hearing were responses finally (though completely inadequate) provided.

9

Since that time (and additional letters and a Second Motion to Compel) Plaintiff has failed to produce supplemental responses and documents even for the most basic of questions. Based on the foregoing, Defendants do not believe that any lesser sanction (than dismissal) will deter Plaintiff from further discovery abuses.

F.  **The meritoriousness of the claim.**

The principal claim asserted by Plaintiff involves an alleged lack of payment for concrete placed by Plaintiff (the work was the functional equivalent of pouring a sidewalk). The dispute focuses upon the rate of payment for this work. Defendants contend that the rate of payment was $284.00 per cubic yard, as reflected in a formal Supplemental Agreement executed by the parties. Importantly, it is undisputed that Defendant Balfour Beatty paid Plaintiff for this work at the cubic yard rate (approximately $78,000.00). Plaintiff contends that an earlier, letter agreement exists for this work to be paid at a rate of $284.00 per square yard. Thus, Plaintiff seeks approximately $630,000.00 more than it already has been paid for this work.[3] Although Plaintiff has failed to respond to Defendants' interrogatory request which expressly asked Plaintiff to identify its actual costs for performing this work, Defendants believe that Plaintiff's actual costs were in the order of what Plaintiff has already been paid. Consequently, it appears that the principal amount sought in this action is effectively an eight-hundred percent (800%) profit.

---

[3] Generally, due to the work in question being approximately four inches (4") in depth, the conversion between cubic yards and square yards is a factor of nine (9). Coincidentally, the additional payment sought by Plaintiff is roughly eight (8) times the amount already paid.

The remainder of Plaintiff's monetary claims largely involves alleged consequential damages. In particular, Plaintiff alleges that Defendant Balfour Beatty's purported failure to pay (the 800% profit, among others), led to Plaintiff deciding not pay its tax liabilities, thereby resulting in penalties, fines and interest. Plaintiff has generically estimated this increased tax liability at $100,000.00; however, Plaintiff has yet to provide Defendants with substantiation for this claimed amount. Moreover, Plaintiff produced a letter purportedly from its accountant to the IRS claiming that it could not meet its tax obligations based upon uncollected accounts receivable and substantial losses it suffered due to underestimating a bid for a project unrelated to the project which is the subject of this action.

Plaintiff also seeks approximately $1,000,000.00 for an alleged inability to obtain bonding that Plaintiff claims was necessary for it to procure work on certain other construction projects. During the brief deposition session held on February 27, 2003, however, Plaintiff's representative conceded that Plaintiff has never been able to obtain bonding, even before the alleged failure to pay the 800% profit. In this light, Defendants' skepticism of Plaintiff's claims is readily understandable.

## CONCLUSION

Although the Court need only find that the greater weight of the above factors warrant dismissal, each factor is established in favor of dismissal. The pattern of conduct exhibited by the Plaintiff overwhelmingly supports dismissal with prejudice. Therefore, due to the actions and inactions of the Plaintiff, dismissal of this action with prejudice is appropriate.

Respectfully submitted on this _____ day of April, 2003.

                           MOYE, O'BRIEN, O'ROURKE, PICKERT & MARTIN, LLP

By_____
       Sean M. Dillon
       Florida Bar No. 075388
       Teresa A. Eyerman
       Florida Bar No. 089362
       Moye, O'Brien, O'Rourke, Pickert
        & Martin, LLP
       800 South Orlando Avenue
       Maitland, Florida 32751
       (407) 622-5250
       Attorneys for Defendants

cc:    Charles W. Rubendall, III, Esq.

## CERTIFICATION OF SERVICE

We hereby certify that a copy hereof has been furnished to Jeffrey D. Servin, Esq., Goldman & Associates, 1500 Market Street, 12th Floor East, Philadelphia, PA 19102, by overnight delivery on this _____ day of April, 2003.

        MOYE, O'BRIEN, O'ROURKE, PICKERT & MARTIN, LLP

        By_____
          Sean M. Dillon
          Florida Bar No. 075388
          Teresa A. Eyerman
          Florida Bar No. 089362
          Moye, O'Brien, O'Rourke, Pickert
           & Martin, LLP
          800 South Orlando Avenue
          Maitland, Florida  32751
          (407) 622-5250
          Attorneys for Defendants